On the twelfth day of April 1859, the Honorable EBENEZER ROCKWOOD HOAR, of Concord, was appointed a Justice of this court, in place of Mr. Justice THOMAS, resigned, and took his seat upon the bench on the sixteenth day of April, at the term of the court then held at Boston in the county of Suffolk.

---

### WILLIAM H. DINGMAN vs. HENRY MYERS.

*Audita querela* may be maintained by a judgment debtor, residing out of the Commonwealth, and not served with process, to set aside an execution taken out by the creditor

without first filing the bond required by the Rev. Sts. *c.* 92, § 6; even after the execu tion has been levied upon his real estate and returned satisfied.

AUDITA QUERELA.  At the trial in the court of common pleas in Berkshire, the following facts were proved: Myers sued out of that court a writ of attachment against Dingman, who was described therein as formerly of West Stockbridge, but now of the State of New York, and who in fact was not then, or ever since, a resident of this commonwealth.  There was no service upon him and no appearance by or for him in the action.  At the return term, it was suggested that he was out of the Commonwealth, and an order of notice was passed and complied with.  Judgment on default was obtained against him, and an execution issued thereon, without any bond having been first given by Myers, and was levied upon Dingman's real estate, and returned satisfied.  Myers conveyed away the estate levied upon and set off to him, by deed duly recorded, and afterwards filed a bond in the action.

Upon these facts, *Mellen*, C. J. ruled that the writ of *audita querela* could not be maintained, and the plaintiff alleged exceptions, which were argued at Lenox at September term 1858.

*J. Price*, for the plaintiff.

*J. E. Field*, for the defendant.  The ruling was right.  At the time of the issuing of the writ of *audita querela* the plaintiff's land had been taken in execution, and the execution had been returned satisfied.  Injury or danger of injury is essential to the maintenance of the writ.  *Coffin* v. *Ewer*, 5 Met. 228.  *Kimball* v. *Parker*, 7 Met. 63.  *Hadlock* v. *Clement*, 12 N. H. 68.  *Bryant* v. *Johnson*, 24 Maine, 304.  *Phelps* v. *Slade*, 13 Verm. 195.

DEWEY, J.  The giving of a bond to repay the amount of the judgment, if reversed on review within a year, was a prerequisite to issuing an execution, and imperatively required by the Rev. Sts. *c.* 92, § 6.  For this error the question now arises, what is the proper remedy?  A writ of error does not lie in such case, as was held in *Johnson* v. *Harvey*, 4 Mass. 483.  The defendant in the former suit might have sued out a writ of review within a year after the rendition of the judgment.  We

think he may also resort to his writ of *audita querela,* given by the Rev. Sts. *c.* 112, § 1. This seems to be sanctioned by the court in their opinion in the case of *Johnson* v. *Harvey,* above cited. In *Lovejoy* v. *Webber,* 10 Mass. 103, it was said that the cases where *audita querela* is a proper remedy are left to be determined by the rules of the common law. It was also held to be a concurrent remedy with a petition for review.

This form of proceeding has more usually been resorted to, to procure a discharge from an illegal arrest improperly obtained, or a release of property from being sold upon an execution then in force, and in the hands of an officer. But this remedy is not thus restricted. 2 Saund. 148, *notes.* Com. Dig. Audita Querela, A. *Gridley* v. *Harraden,* 14 Mass. 497.

Upon the facts offered in evidence, the writ of *audita querela* was a proper remedy, the execution issued illegally, and all proceedings under it must be vacated. *Exceptions sustained.*